**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LABONITA GRAVES<br>6812 Central Avenue, #302<br>Capitol Heights, MD 20743,<br><br>     Plaintiff,<br><br>  v.<br><br>JACOB J. LEW<br>Secretary of the Treasury<br>U.S. Department of the Treasury<br>1500 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20220,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

1.   Plaintiff LaBonita Graves, by and through undersigned counsel, hereby files this action against Defendant U.S. Department of the Treasury, pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 *et seq.* Plaintiff seeks relief pursuant to the Rehabilitation Act, e.g., 29 U.S.C. § 794a, and the ADA, as amended, e.g., 42 U.S.C. § 12117, for harms caused to Plaintiff by Defendant's failure to provide an effective reasonable accommodation to

Plaintiff.    Plaintiff  requests  as  relief:  a  declaratory
judgment;  a  prospective  injunction;  compensatory  damages;
reasonable  attorney  fees,  costs,  and  expenses;  and  such  other
relief  as  the  Court  deems  just  and  appropriate,  in  order  to
fully  remedy  Defendant's  unlawful  acts.

**PARTIES**

2.    Plaintiff  LaBonita  Graves  is  a  United  States  citizen
and  a  resident  of  Maryland,  and  was  so  at  all  times  relevant
to  this  Complaint.    She  currently  resides  at  6812  Central
Avenue,  #302,  Capitol  Heights,  MD  20743.    Plaintiff  was
employed  by  Defendant  U.S.  Department  of  the  Treasury,  Bureau
of  Engraving  and  Printing,  in  the  District  of  Columbia  at  all
times  relevant  to  this  Complaint.

3.    Defendant  Jacob  J.  Lew  is  the  Secretary  of  the
Treasury,  U.S.  Department  of  the  Treasury,  and  as  such,  has
ultimate  authority  over  the  actions  of  the  Department  and  its
Bureaus,  including  the  Bureau  of  Engraving  and  Printing  (BEP),
where  Plaintiff  has  worked  since  October  1995.    Defendant  is
sued  in  his  official  capacity  only.    Defendant's  address  is
1500  Pennsylvania  Avenue,  N.W.,  Washington,  D.C.  20220.

## JURISDICTION AND VENUE

4.   This   Court   has   jurisdiction   over   this   Complaint because   it   presents   questions   of   federal   law.   28 U.S.C. § 1331.

5.   Specifically,   this   Court   has   jurisdiction   over   this Complaint   pursuant   to   the   Rehabilitation   Act   of   1973,   29 U.S.C. § 701 *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 *et seq.*   Plaintiff's office was located in Washington, D.C., and all of her supervisors were located in Washington, D.C.   The unlawful acts complained of took place in Washington, D.C.

6.   Plaintiff   LaBonita   Graves   initiated   and   fully exhausted the administrative process, by filing an a complaint with the BEP and participating in a hearing before the United States Equal Employment Opportunity Commission ("EEOC").   The EEOC issued its Decision on June 3, 2013, and Defendant mailed its Final Order to Plaintiff's counsel on June 17, 2013, which was received on June 18, 2013.   Ms. Graves hereby timely files her Complaint in this Court within 90 days of receipt of Defendant's Final Order, i.e., September 16, 2013.

3

**FACTS**

7.    Plaintiff LaBonita Graves, a long-time, dedicated employee of the BEP, sustained a broken left ankle in December 2009 and an additional right foot condition which required an operation on March 23, 2010.   Due to these severe foot and ankle conditions, Ms. Graves' mobility was severely limited throughout 2010, until October 27, 2010, when she recovered sufficiently for her primary physician to remove her work restrictions.

8.    After Ms. Graves submitted her request for an accommodation in early February 2010, the Department of the Treasury's Bureau of Engraving and Printing (BEP) accepted her medical restrictions and accommodation request, recognized her disability, and purported to grant her an accommodation of her disability on March 8, 2010.

9.    On March 11, 2010, Ms. Graves' union representative, Shawn Coleman, informed the BEP in writing that it had failed to provide an effective accommodation for Ms. Graves.   The BEP never responded to Mr. Coleman or Ms. Graves with an effective accommodation and also failed to engage in the interactive process with Ms. Graves.   From approximately March 8, 2010 to

4

October 27, 2010, Ms. Graves was required to fulfill her job duties without receiving an effective reasonable accommodation of her disability.

10. By not receiving an effective accommodation of her disability, Ms. Graves suffered significant injuries to her ankles, feet, and legs, as well as significant emotional harm.

11. Regarding her first disability, Ms. Graves sustained a broken left ankle in December 2009, but she sought to continue working and contributing to the BEP's mission. Thus, on or about February 3, 2010, Ms. Graves submitted a request for accommodation to the BEP through her union representative Shawn Coleman.

12. Ms. Graves' movement was severely limited as her left ankle was in a cast and then in an orthopedic boot from January to May 2010. Ms. Graves was in severe pain, with a throbbing ankle and severe limitations on her mobility, and she had to use a crutch to limp around.

13. Ms. Graves' problems with her left ankle continued until October 27, 2010, and she was placed on medical restrictions by orthopedist Dr. Robert Wilson from January 6, 2010 to October 27, 2010. For most of this time period, Dr.

5

Wilson ordered that Ms. Graves could only work in her immediate work area and not be subject to travel about the office until her ankle was fully healed.

14. In addition, Ms. Graves' right foot developed abscesses which required an operation on March 23, 2010, leaving Ms. Graves in a orthopedic shoe on her right foot with swelling, infections, pain, and limited mobility for approximately three months (April to June 2010). Even after the orthopedic shoe was removed, Ms. Graves experienced significant pain and inflammation in her right foot until approximately the end of September 2010. For her right foot condition, Ms. Graves was treated by orthopedic surgeon Dr. Gail Pearson, who issued separate medical restrictions for Ms. Graves' right foot starting around April 1, 2010. Notably, Dr. Pearson wrote that Ms. Graves could not walk more than 200 feet from her desk until her foot was completely healed.

15. Ms. Graves' broken left ankle and subsequent right foot condition and surgery limited her ability to walk effectively. Her ankle was throbbing, she experienced much pain and inflammation in her left ankle and right foot, and she had tremendous difficulty moving around. The significant

pain extended throughout her feet and legs and caused Ms. Graves tremendous distress from December 2009 until the at least the end of October 2010.

16. Due to all of these difficulties with her mobility, Ms. Graves properly requested an accommodation of her disability starting in early February 2010, and she submitted medical certificates from Dr. Wilson or Dr. Pearson to the BEP every month from January to October 2010, according to the BEP's requirement.

17. BEP managers Scott Green and James Brent, Ms. Graves' first and second-line supervisors during the relevant time period for this case, have both admitted that Ms. Graves had a disability for which accommodation was necessary, and thus, they attempted to provide her with an accommodation.  In 2010, managers Green and Brent had seen some of Ms. Graves' medical certificates and had observed her using a crutch and leg boots for her disabilities.  Further, BEP manager Brent, Chief of the Office of Engraving at the time, testified under oath that Ms. Graves properly submitted her request for accommodation to the BEP, along with the appropriate medical certificates detailing her disability and work restrictions,

7

which she submitted every month from January to October 2010.

18. On March 8, 2010, manager Brent issued a written Decision regarding Ms. Graves' accommodation request, which purported to grant her request that she only work in her immediate work area and not be subject to travel about the office, as Dr. Wilson had instructed. Mr. Brent's Decision also informed Ms. Graves that she would be transferred from the seventh floor to the fourth floor, despite her objections in her accommodation request. Ms. Graves' walking would have been much more limited on the seventh floor than on the fourth floor and her accommodation request sought to reduce her walking in line with her medical restrictions, e.g., by working on the seventh or fifth floor.

19. By transferring Ms. Graves from her work on the seventh floor to a production line on the fifth floor, yet physically placing Ms. Graves in a room on the fourth floor, the BEP forced her to routinely walk to the fifth floor to fulfill her job duties, as well as walk around the fourth floor in furtherance of her normal job duties. This excessive walking around the building, which Ms. Graves had to do to fulfill her job duties, violated her medical restrictions

8

(that she only work in her immediate work area and not be subject to travel about the office). Yet Ms. Graves' position required her to routinely walk around the fourth floor and to the production line on the fifth floor, as her direct supervisor Mr. Green has admitted under oath.

20. Due to this failure to provide Ms. Graves with an effective accommodation of her disability, Ms. Graves had her representative inform the BEP in writing of its failure to accommodate her. Specifically, on March 11, 2010, Ms. Graves' union representative, Shawn Coleman, sent an email to a high-level BEP manager, Jon Cameron, informing him that the BEP had failed to provide an accommodation for Ms. Graves. Ms. Graves, through her representative, contested the March 8, 2010 accommodation Decision of Mr. Brent and informed the BEP that it was forcing her to work in excess of her doctor's restrictions and travel from floor to floor to effectively do her job, which violated her doctor's restrictions that she work in her immediate work area and not travel about the office until her foot was healed. Mr. Brent considered this email from Ms. Graves' representative to be an appeal or request for a re-consideration of his Decision regarding Ms.

9

Graves' accommodation request.

21. After March 11, 2010, there was no response by managers Green or Brent to Ms. Graves or her representative about providing her with an accommodation of her disability.

22. In providing for an effective accommodation, the BEP should ensure that there is discussion between the person requesting the accommodation and the BEP's decision-maker. After Ms. Graves' representative informed the BEP on March 11, 2010 that its attempt at accommodation was not effective, the BEP should have contacted her or her representative as part of its obligation to engage in the interactive process and ensure that there was a discussion between Ms. Graves and the BEP decision-maker.

23. Mr. Brent has admitted under oath that BEP management had a "duty to reach out and communicate with" Ms. Graves after March 11, 2010, and that supervisor Scott Green should have contacted her. However, neither Mr. Green nor Mr. Brent reached out to Ms. Graves or her representative to engage in the interactive process after March 11, 2010.

24. Further, in a response email to Ms. Graves' representative on March 23, 2010, BEP manager Jon Cameron

informed Ms. Graves' representative that managers Brent and
Korbol would meet with her to discuss a temporary work
assignment, but they failed to do so.  BEP management had
internal discussions following Ms. Graves' complaint about the
lack of accommodation and having to walk in excess of her
medical restrictions, but the BEP managers never followed up
with Ms. Graves or her representative to engage in the
interactive process after March 11, 2010.

25.  After March 11, 2010, the BEP did not take any
action to accommodate Ms. Graves or engage in the interactive
process with her to find an effective accommodation.  The BEP
took the position that its decision to place Ms. Graves in a
room on the fourth floor was an effective accommodation of her
disability, despite the fact that she was required to walk
around the building in violation of her doctor's restrictions
as part of her job.  As a result, her health suffered, and she
endured approximately seven months of physical and mental pain
and anguish, due to the BEP's callous and unlawful failure to
provide Ms. Graves with an effective accommodation of her
disability.

26.  Although the BEP has the burden to provide Ms.

11

Graves with an effective accommodation and her representative informed BEP management on March 11, 2010 that her job required her to walk in excess of her doctor's restrictions, the BEP never contacted Ms. Graves or her representative to discuss ways to reduce her walking or otherwise provide her with an effective accommodation. The BEP maintained its position that moving Ms. Graves to room 404 was an effective accommodation and did not have to be altered, even after (1) Ms. Graves notified BEP management that they had not accommodated her and were subjecting her to excessive walking in violation of her medical restrictions; (2) she had surgery on her right foot in March 2010 which further hampered her movement; (3) she filed a complaint with the EEO Office; and (4) she complained to Congress.

27. Ms. Graves had surgery on her right foot and was out of the office from March 22 to April 6, 2010 as a result. On April 6, 2010, Ms. Graves returned to work with two major conditions that caused her great pain and limited mobility; her left ankle was in an orthopedic boot, her right foot was in an orthopedic shoe, and she had to use a cane. BEP management was aware of her worsening physical condition and

new medical restrictions, but they never considered any ways
to reduce her walking or otherwise accommodate her after April
6, 2010.

28. Instead, Ms. Graves was required to frequently walk
from the fourth floor to the fifth floor to monitor the offset
production line, which she oversaw as the Management Analyst
for the offset line. She also had to frequently walk to the
copy room on the fourth floor and to room 412 to drop off
documents for Pat Reidy, the supervisor for the offset line
but not Ms. Graves' supervisor. For example, Ms. Graves would
have to walk to the copy room (about 149 feet from her desk)
to make copies of the Request for Identification Number
Assignments for Pat Reidy and then walk to room 412 (122 feet
away from her desk) to drop them off in his box. For the
processing of other documents (specifically production
travelers, transfer delivery schedules, and cancellation
schedules), Ms. Graves had to walk back and forth between the
fourth and fifth floors, a distance of about 300 feet round
trip, as well as make copies in the copy room on the fourth
floor. Altrise Brown-Weldon, the Management Analyst on the
offset production line from 2001 to 2010 who at Mr. Green's

13

direction trained Ms. Graves to take over the position, has testified under oath that Ms. Graves' Management Analyst position required extensive walking around the fourth and fifth floors to process all of the forms and monitor the offset production line.

29. By subjecting Ms. Graves to extensive walking around the building, when her doctor's restrictions prohibited her from walking outside her immediate work area and "about the office," the BEP failed to provide her with an effective accommodation of her conspicuous disability. As a result, Ms. Graves suffered a great deal of pain and swelling in her lower legs, e.g., in her left ankle, and Dr. Wilson noted that the BEP's violation of her medical restrictions contributed to additional pain and swelling of her left ankle. Ms. Graves also suffered from emotional injuries as a result of the BEP's unlawful, callous actions.

30. It was common knowledge that Ms. Graves had to limp around the building with serious ankle and foot conditions, to perform her job. For instance, photo-engraver Sidney Burch, photo-engraver Robert Armstrong, and plate maker Kenneth Garner (among others) saw Ms. Graves limping and hobbling

14

around the building.   Further, Ms. Graves informed management that her medical restrictions were being violated and her accommodation request not met.

31.  BEP supervisors Brent and Green could have allowed Ms. Graves not to walk more than her medical restrictions permitted and could have instructed other employees to perform all of her walking.   However, this did not happen, and supervisors Brent and Green both have admitted under oath that they did not adjust how they instructed their subordinate employees to ensure that an effective accommodation was provided to Ms. Graves after March 11, 2010.

32.  BEP management could have accommodated Ms. Graves in a variety of ways, such as giving her a wheelchair or motorized scooter, providing her with a runner to transport all of her documents outside her office, or letting her stay on the seventh floor where the walking required by the position there was much more limited.   However, the BEP failed to offer or provide any of these options to Ms. Graves.

33.  In contrast, the BEP has accommodated employees with motorized scooters.   For instance, the BEP gave its employees Bob Smith and Pam Gardner motorized scooters to help them move

around the building.    The BEP also provided a motorized scooter to a plate printer foreman.    Notably, Pam Gardner had exactly the same disability as Ms. Graves — a broken ankle!

34. While the BEP has provided a motorized scooter to another female employee with a broken ankle, BEP management did not even speak to Ms. Graves or her representative after she challenged the purported accommodation as ineffective. Union president Kenneth Garner, who has granted accommodations and discussed them with management during his 32 years at the BEP, testified under oath that Mr. Brent and Mr. Green were not sensitive to Ms. Graves' disability, could have done a lot more to help her, and did not accommodate her.

35. Supervisors Green and Brent did not assign any other employees to take over any of Ms. Graves' duties or relieve Ms. Graves from any of her duties, except for physical inventory, which was performed on the fifth floor. Ms. Graves' direct supervisor, Mr. Green, allowed Ms. Graves to forego her duties regarding physical inventory while she had a disability, but she was required to perform all of the other duties of her position, including the duties that called for her walking around the fourth and fifth floors.

16

36.  The BEP subjected Ms. Graves to a significant amount of walking in violation of her doctor's restrictions, and recklessly and unlawfully refused to provide Ms. Graves with an effective reasonable accommodation of her disability.

37.  The BEP accepted Ms. Graves' accommodation request, recognized her disability, and purported to grant her an accommodation of her disability.  However, the BEP's actions did not provide for an effective reasonable accommodation, and Ms. Graves, through her representative, informed BEP management on March 11, 2010 that its attempt at accommodation was ineffective.  Afterwards, the BEP did not provide for an effective accommodation to Ms. Graves for her disabilities on both legs, thereby subjecting Ms. Graves to a great deal of physical pain, along with emotional pain and an unwarranted delay in her recovery time.

38.  From December 2009 until October 2010, Ms. Graves experienced significant pain that started in her feet and legs but affected her entire body.  For example, she testified: "At that time in March [2010], along with the walking boot, I had the walking shoe on, so it was just -- it would just send chills through your body because everything was -- everything

17

was hurting.    Everything  was  hurting  in  my  feet,  my  legs, everything  was  hurting.    And  then  it  felt  like  a  lot  of  days like  I  was  walking  in  the  mud,  I  was  dragging,  it  would  --  it was  like  something  was  holding  me  down."

39.  Ms.  Graves  experienced  throbbing  pain  in  her  left ankle  every  day  from  December  2009,  when  the  disability mainfested,  until  October  2010.    In  addition,  Ms.  Graves experienced  throbbing  pain  and  inflammation  in  her  right  foot every  day  from  March  2010  until  approximately  the  end  of September  2010. See also paragraphs  12  to  15 supra.

## CAUSE OF ACTION

### COUNT I
### FAILURE TO PROVIDE AN EFFECTIVE REASONABLE ACCOMMODATION
### IN VIOLATION OF THE REHABILITATION ACT AND
### AMERICANS WITH DISABILITIES ACT, AS AMENDED

40.  Based  upon  the  facts  described  in  the  preceding paragraphs,  Defendant  unlawfully  failed  to  provide  an effective  reasonable  accommodation  to  Plaintiff  LaBonita Graves  in  violation  of  the  Rehabilitation  Act  of  1973,  29 U.S.C.  §  701 et  seq., and  the  Americans  with  Disabilities  Act of  1990  ("ADA"),  as  amended  by  the  ADA  Amendments  Act  of  2008

18

("ADAAA"), 42 U.S.C. § 12101 *et seq.*

## RELIEF REQUESTED

41.  Plaintiff requests any and all relief provided by the discrimination laws and laws on reasonable accommodation, including but not limited to the following:

a.  A declaratory judgment that Defendant failed to provide Plaintiff with an effective reasonable accommodation from February 3, 2010 to October 27, 2010;

b.  A prospective injunction that instructs Defendant to properly engage in the interactive process with Plaintiff regarding her disabilities in the future;

c.  Maximum compensatory damages allowed by law ($300,000.00) to Ms. Graves for her physical and emotional injuries, including emotional pain and suffering and the loss of enjoyment of life, related to Defendant's unlawful violation of the Rehabilitation Act and ADA;

d.  The reasonable attorney fees at prevailing market (<u>Laffey</u>) rates, costs, and expenses of this action;

and

e.   Such other relief as the Court deems just and
appropriate.

## **<u>JURY TRIAL</u>**

42. Plaintiff requests a trial by jury on all issues
that are triable by jury.

_Daniel K. Gebhardt_
DANIEL K. GEBHARDT
(D.C. Bar No. 975703)
JOSEPH D. GEBHARDT
(D.C. Bar No. 113894)
GEBHARDT & ASSOCIATES, LLP
1101 17th Street, N.W.
Suite 807
Washington, DC 20036-4716
(202) 496-0400

September 16, 2013          Attorneys for Plaintiff